UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA M. MURPHY,<br><br>Plaintiff,<br><br>v.<br><br>CHARLEY D. SMITH et al.,<br><br>Defendants. | No. 2:25-cv-03275-DAD-JDP<br><br>ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on an *ex parte* motion for a temporary restraining order filed on November 12, 2025 by plaintiff Anna M. Murphy, proceeding *pro se*. (Doc. No. 2.) For the reasons stated below, plaintiff's *ex parte* motion for a temporary restraining order will be denied.

**BACKGROUND**

On November 12, 2025, plaintiff filed a complaint against defendants Charley D. Smith, Ranger John Henderson, Damon Smith, Ryan Smith, Winged's Ranch, LLC, The Charley D. Smith Living Trust, The Charley D. Smith Family Trust, and Placer County. (Doc. No. 1 at 1.) In her complaint, plaintiff alleges as follows.

In 2012, plaintiff began residing at 6010 McCourtney Road in Lincoln, California. (*Id.* at ¶ 20.) The property includes a separate dwelling located at 6020 McCourtney Road that plaintiff

1

1   rents to a tenant. (*Id.*) Defendant Charley Smith ("defendant Smith"), induced plaintiff to invest
2   in and improve his properties, including the property located at 6030[1] McCourtney Road,
3   resulting in the parties executing a residential lease with an option to purchase and a contract for
4   deed. (*Id.* at ¶¶ 22–23.) As part of her down payment for the contract of deed, plaintiff
5   transferred a Florida property that she owned to defendant Smith, "which Smith structured as a
6   non-refundable asset, effectively locking Plaintiff into the deal." (*Id.* at ¶ 24.) Defendant Smith
7   subsequently altered the contract of deed, which consequently eliminated all protections that
8   plaintiff previously enjoyed under the agreement. (*Id.* at ¶ 25.) That altered document was then
9   recognized as an equitable mortgage in a June 6, 2017 ruling issued by the Placer County
10  Superior Court. (*Id.* at ¶ 26.)

11      According to plaintiff, the Placer County Superior Court "systematically failed to protect"
12  her rights. (*Id.* at ¶ 45.) For example, in ruling on a motion for summary judgment in a civil
13  proceeding before it, that court concluded that plaintiff failed to show that she owned the
14  property. (*Id.* at ¶ 50.) The state court also failed to enforce the 2017 ruling that the contract for
15  deed was a security device and plaintiff held an equitable interest in the property. (*Id.* at ¶ 49.)
16  On December 18, 2020, the Placer County Superior Court issued judgment in favor of defendant
17  Smith on several of the claims that he brought against plaintiff in his cross-complaint in the state
18  court proceedings. (Doc. No. 1 at 200–201.) In its ruling, the state court concluded that Smith

---

[1] While it is unclear whether plaintiff misstates the address as 6030, plaintiff attaches to her complaint numerous exhibits, including previous state court judgments regarding the property at issue, which the court construes as part of plaintiff's complaint. *See George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Govs.*, No. 22-cv-00424-BAS-DDL, 2022 WL 17330467, at *2 n.2 (S.D. Cal. Nov. 29, 2022) (considering exhibits attached to complaint as part of the pleadings in resolving motion for temporary restraining order). A review of the underlying state court's tentative ruling illuminates the facts surrounding the residential lease with an option to purchase and the subsequent contract of deed. In its findings of fact, the state court noted that the properties located at 6010 and 6020 McCourtney Road were originally owned by defendant Smith. (Doc. No. 1 at 178.) Smith initially rented the property to plaintiff with an option to purchase clause included in the lease agreement, the parties then entered into a contract for deed for the property in which defendant Smith agreed to sell the property to plaintiff for $373,000.00. (*Id.* at 178, 181.) Plaintiff subsequently fell behind on her payments and the civil action in state court followed. (*Id.* at 184.) There is no mention of a lease of contract of deed for a property located at 6030 McCourtney Road in the state court's tentative ruling. (*See id.* at 166–193.)

1 was "entitled to Judicial Foreclosure of the property by way of his First Amended Complaint."
2 (*Id.*.)  A notice of entry of judgment was filed on January 6, 2021.  (*Id.* at 195.)  A sheriff's sale
3 of the properties was authorized on September 17, 2025.  (*Id.* at 156.)

4     Based on these and other allegations, plaintiff asserts the following eight causes of action:
5 (1) violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.); (2) a claim for
6 violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; (3) a
7 claim for violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C.
8 § 1983; (4) intentional infliction of emotional distress; (5) abuse of process; (6) fraud; (7) civil
9 conspiracy; and (8) malicious prosecution.[2]  (*Id.* at ¶¶ 58–104.)

10     Plaintiff requests the following relief in her complaint:  (1) injunctive relief in the form of
11 a temporary restraining order, preliminary injunction, and permanent injunction enjoining the
12 November 13, 2025 sheriff's sale of the properties located at 6010 McCourtney Road in Lincoln,
13 California and 6020 McCourtney Road in Lincoln, California;[3] (2) $10 million in damages for
14 past and future economic losses and non-economic losses; (3) punitive damages; (4) statutory
15 damages under the Americans with Disabilities Act; (5) attorneys' fees and costs pursuant to 42
16 U.S.C. § 1988 and other applicable statutes; and (6) pre- and post-judgment interest.  (Doc. No 1.
17 at 31–32.)

18     On November 12, 2025, plaintiff filed an *ex parte* motion for a temporary restraining
19 order seeking to enjoin the sheriff's sale of the properties located at 6010 and 6020 McCourtney
20 Road in Lincoln, California.  (Doc. No. 2.)  The sheriff's sale is scheduled to commence on
21 November 13, 2025 at 10 A.M.  (*Id.* at 2.)

22 **LEGAL STANDARD**

23     The standard governing the issuing of a temporary restraining order is "substantially
24 identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v.*

---

[2] Plaintiff also seeks injunctive relief which she characterizes as a separate cause of action.

[3] In seeking a permanent injunction, plaintiff also seeks an order vacating the state court judgment, prohibiting defendants from further enforcement actions, and "[d]eclaring plaintiff the rightful owner of the Property."  (*Id.* at 31.)

3

*John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that she is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

/////
/////
/////
/////

## DISCUSSION[4]

"The *Rooker-Feldman* doctrine prohibits federal district courts from hearing cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Davis v. Cal. Dep't of Child Servs.*, No. 2:20-cv-01393-TLN-AC, 2020 WL 5039243, at *2 (E.D. Cal. Aug. 26, 2020) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 284 (2005)), *report and recommendation adopted sub nom. Davis v. Cal. Dep't of Child Support Servs.*, 2020 WL 5943974 (E.D. Cal. Oct. 7, 2020). In other words, this federal court lacks jurisdiction over *de facto* appeals of state court judgments. *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003). "It is a forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 1163. "A federal district court

---

[4] Federal Rule of Civil Procedure 65(b)(1) provides that a court may only issue a temporary restraining order *ex parte* if: (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable harm will result to the movant before the adverse party can be hear in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1). Additionally, the Local Rules of this court require the court to consider "whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." L.R. 231(b). "In order to justify *ex parte* relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures; and (2) that it is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Myles v. PennyMac Loan Servs. LLC*, No. 17-cv-04343-PSG-MRW, 2017 WL 8160965 (C.D. Cal. July 26, 2017) (citing *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). "Courts regularly deny TROs for failing to comply with the stringent requirements of Rule 65(b)(1), including those sought by *pro se* plaintiffs." *Storer v. Placer County Super. Ct.*, No. 2:25-cv-02066-DC-CSK, 2025 WL 2306969, at *6 (E.D. Cal. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2605785 (E.D. Cal. Sept. 9, 2025). Here, plaintiff had notice of the sheriff's sale approximately two months prior to the filing of her complaint and her motion for temporary restraining order, but failed to file the pending *ex parte* motion until mere hours before the scheduled sheriff's sale. (Doc. No. 1 at 156) (authorizing Placer County Sheriff's Office to execute the foreclosure sale of the property on September 17, 2025). Accordingly, plaintiff has unduly delayed in bringing her motion for a temporary restraining order and denial of that motion is warranted for this reason alone. *See Brewer v. Loancare, LLC*, No. 2:25-cv-01157-DC-CSK (PS), 2025 WL 1400288, at *2 (E.D. Cal. May 14, 2025) (collecting cases regarding delay in seeking relief to prevent foreclosure sales). Nevertheless, the court will consider the merits of plaintiff's motion in this order.

1 dealing with a suit that is, in part, a forbidden *de facto* appeal from a judicial decision of a state
2 court must refuse to hear the forbidden appeal." *Id.* at 1158. "As part of that refusal, it must also
3 refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue
4 resolved by the state court in its judicial decision." *Id.*

5 As stated above, the first part of the *de facto* appeal test considers whether "the plaintiff in
6 federal district court complains of a legal wrong allegedly committed by the state court[.]" *Noel*,
7 341 F.3d at 1163. Here, plaintiff alleges that the state court committed several legal errors. She
8 complains that the Placer County Superior Court "systematically failed to protect" her rights by
9 "erroneously" finding that plaintiff could not show that she owned the subject property and
10 improperly denying her claim for homestead exemption with respect to the property thereby
11 infringing on her property and due process rights. (Doc. Nos. 2 at 25; 2-1 at 1–2.) "Because
12 [plaintiff] assert[s] a direct challenge to a state court's factual or legal conclusion[s], plaintiff['s]
13 federal suit is a *de facto* appeal of the state court judgment." *Feldman v. McKay*, No. 15-cv-
14 04892-MMM-JEM, 2015 WL 7710145 (C.D. Cal. Nov. 25, 2015) (collecting cases) (internal
15 quotation marks omitted) (quoting *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir.
16 2013)). Moreover, plaintiff's claim asserting a violation of the ADA based on her allegations of
17 various purported failures of the state court to provide her with reasonable accommodations is
18 similarly barred. *See Langworthy v. Whatcom County Super. Ct.*, No. 20-cv-01637-JCC, 2021
19 WL 1788391, at *3 (W.D. Wash. May 5, 2021) (collecting cases). Because plaintiff complains
20 that the state court committed legal errors in ruling against her, the first part of the *de facto* appeal
21 test is satisfied.

22 The second part of the *de facto* appeal test asks whether "the plaintiff in federal district
23 court . . . seeks relief from the judgment of that [state] court." *Noel*, 341 F.3d at 1163. "To
24 determine whether an action functions as a *de facto* appeal, we 'pay close attention to the *relief*
25 *sought* by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012)
26 (citation omitted). Here, plaintiff seeks relief in the form of a temporary restraining order to
27 enjoin the sheriff's sale of the residential properties located at 6010 and 6020 McCourtney Road
28 in Lincoln, California. In making such a request, plaintiff clearly seeks relief from the judgment

6

1   of the state court that this federal court simply cannot grant. *Sweeney v. Carringer*, No. 25-cv-
2   03148-JST, 2025 WL 2597543, at *3 (N.D. Cal. July 24, 2025) ("The requests to vacate a
3   sheriff's auction ordered by the state court and to enjoin further enforcement by that court amount
4   to 'the *de facto* equivalent of' an appeal of state court decisions."); *see also Graham v. Am. Home*
5   *Mortg.*, No. 13-cv-03322-RS, 2013 WL 3989676, at *2 (N.D. Cal. Aug. 2, 2013) (denying a
6   motion for a temporary restraining order because, although the "complaint attack[ed] the
7   underlying non judicial foreclosure, rather than any state court judgment, to the extent her TRO
8   [sought] to restrain state officers from carrying out a state court judgment, jurisdiction would not
9   exist."). Accordingly, the court concludes that the second part of the *de facto* appeal test is also
10  satisfied here.

11  Since plaintiff's suit is brought in this federal court as a forbidden *de facto* appeal from
12  judicial decisions in the underlying state court action, this court need not reach the question of
13  whether other issues are inextricably intertwined with an issue resolved by the state court in its
14  judicial decision. *Noel*, 341 F.3d at 1158. The *Rooker-Feldman* doctrine applies to bar the
15  exercise of jurisdiction by this court, *id.* at 1156, and as a result, the court concludes that in the
16  pending motion plaintiff has failed to raise even "serious questions going to the merits[,]" *All. for*
17  *Wild Rockies*, 632 F.3d at 1131.

## CONCLUSION

19  For the reasons explained above, plaintiff's motion for a temporary restraining order (Doc.
20  No. 2.) is DENIED.

21  IT IS SO ORDERED.

22  Dated: **November 12, 2025**

23  DALE A. DROZD
    UNITED STATES DISTRICT JUDGE